497 P.2d 638

**CENTRAL BANK & TRUST COMPANY, a corporation, and Utah Valley Bank, Plaintiffs and Appellants,**

v.

**W. S. BRIMHALL, Commissioner of Financial Institutions, et al., Defendants and Respondents.**

**No. 12636.**

Supreme Court of Utah.

May 25, 1972.

---

' 3.  United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149.

Peter W. Billings, of Fabian & Clendenin, Salt Lake City, for appellant.

H. Wright Volker, Asst. Atty. Gen., Salt Lake City, for W. S. Brimhall.

Don B. Allen, Ray, Quinney & Nebeker, Salt Lake City, for First Security Corp.

CROCKETT, Justice:

Plaintiffs, Utah Valley Bank and the Central Bank & Trust Company, appeal from a judgment of the district court which sustained the findings and order of the State Bank Commissioner [1] granting the First Security Corporation a charter to establish a bank in Springville, Utah. The position of the plaintiffs is that the application of First Security to establish the new bank was in fact a subterfuge to disguise its real purpose of establishing a branch bank in Springville which it could not lawfully do.

The statutory provision pertinent here is Section 7-3-6, U.C.A.1953, which states in part:

> ' Except in cities of the first class, . . . *no branch bank* shall be established in any city or town in which is located a bank . . . regularly transacting a customary banking business, *unless the bank* seeking to establish such branch *shall take over an existing bank.*

Inasmuch as Springville is a city of the second class, and already has the Central Bank & Trust Company operating there, no new branch bank could be established except by taking over the existing bank.

Under our law, Section 7-1-26(1), U.C.A.1953, the responsibility for passing

---

1. State Bank Commissioner now officially known as Commissioner of Financial Institutions since L.1967, Ch. 12, § 1; Sec. 7-1-1, U.C.A.1953.

upon the establishment and location of banks is vested in the State Bank Commissioner. This necessarily included the determination as to whether First Security Corporation was attempting to establish a branch bank in Springville, or was proposing the establishment of an independent "unit bank."

The First Security Corporation is a bank holding company which owns and operates a number of banks in this and surrounding states. On February 13, 1970, it filed an application with the Bank Commissioner for approval of its plan to establish the First Security State Bank of Springville. Twelve days later the plaintiff Utah Valley Bank filed an application for the same purpose. Separate hearings were held before the Bank Commissioner on each of the applications. This involved the presentation of extensive testimony and exhibits on behalf of the concerned parties. On August 5, 1970, the Commissioner issued an order which granted First Security Corporation a charter to establish its unit bank (subject to certain requirements: that the Federal Reserve Bank give approval to the First Security Bank holding company to acquire shares of the new Springville bank; and that the deposit insurance required by law from the Federal Deposit Insurance Corporation be obtained). On the same day he rejected the Utah Valley Bank's application to establish a bank in Springville, which had been filed

subsequent to the application of First Security.

Consequent to the foregoing, Utah Valley Bank filed a complaint in the district court pursuant to Section 7–1–26(4), U.C.A.1953, seeking an adjudication that the Bank Commissioner had acted capriciously and arbitrarily, and contrary to law, in denying its application and granting that of First Security. The existing bank, Central Bank & Trust of Springville, which had protested the application before the Bank Commissioner, joined as party plaintiff.

Upon a plenary hearing before the district court, and upon consideration of memoranda from respective counsel, the court made findings and judgment sustaining the action of the Bank Commissioner, stating in part:

(a) The Court hereby finds, concludes. and holds that the application of First Security Corporation before Commissioner Brimhall was proper and valid under the governing statutes of the State of Utah, that *the application thus filed had proper priority over other applicants, that no unlawful concentration of economic powers is created,* . . . .

(b) *The Court further finds,* concludes and holds that in the establishment of First Security State Bank of Springville, applicant First Security Corporation complied with the governing statutes of the State of Utah, and *that*

*said Bank constitutes a lawful "de novo" unit bank.* Although said bank is part of the holding company system of First Security Corporation, it is not under such unitary operation with any other bank that it constitutes a branch of any other bank, and *does not violate the branch banking statutes of the State of Utah as a subterfuge or otherwise.* . . .

In arguing that the Commissioner exceeded his authority and abused his discretion in allowing First Security Corporation to establish the Springville bank, plaintiffs urge that if we look below the surface it will be seen that the proposed bank is not an independent "unit bank," but is in actuality an illegal "branch bank" of First Security, i. e., where a parent bank conducts a banking operation at some other place different and removed from its own location.[2]

In support of that contention they point to these facts: that by reason of its similarity in name the proposed First Security Bank of Springville appears, and has been held out to the public in advertising, to be identified with the First Security banking system; that the First Security Corporation will own all of the shares of the Springville bank, except the qualifying shares of other directors. Of the seven directors, three will be officers and directors of First Security Corporation; the vice president of the Springville bank also serves as a vice president and director of First Security Corporation; and other bank officers also serve in a similar dual capacity. It is also brought out that an employee who transfers to the new Springville bank will retain his health insurance benefits, seniority and retirement rights, the same as if he worked elsewhere in the First Security system.

To be considered in opposition to the foregoing and as tending to give support to the determination made by the Bank Commissioner and the district court are the following: that although the First Security Corporation, as a bank holding company, will own substantially all of the stock of the proposed First Security Bank of Springville, it is in fact a new and separate corporation; that it will be managed by its own officers and directors; that the capital, surplus and reserves are also separate and apart from the First Security holding company and any of the other First Security Banks. Its evidence is that deposits and withdrawals cannot be received or disbursed with respect to any of such other banks. The exception is that there may be accommodation services rendered, including the obtaining of money

2. See First National Bank of Logan, etc. v. Walker Bank & Trust Co., 19 Utah 2d 18, 425 P.2d 414.

for loans from other banks. It proposes to operate under a separate authorization from the Federal Reserve Bank and Federal Deposit Insurance Corporation which distinguishes it from a branch in a banking chain; and it makes its own reports and conducts its own business in relation to state regulatory agencies such as the Industrial and Tax Commissions.

██ It is pertinent to observe that the fact that a bank holding company through stock ownership may own and control a bank does not necessarily make the latter a branch bank of the former.[3] Further, we are not concerned with whether the evidence may be susceptible of being so believed and applied as to arrive at the conclusion that the proposed Springville bank could be considered a branch of First Security Corporation. Our duty is to look upon the whole evidence in the light favorable to the determination made by the Bank Commissioner and the trial court, and to sustain them if there is a reasonable basis in the evidence to justify doing so. ██ In the field of administrative law the assumption is indulged that the administrator (or administrative tribunal) possesses superior knowledge and expertise because of specialized training and experience, and the focus of interest within the particular field. For this reason the well-established rule is that the courts indulge him considerable latitude in determinations he makes on questions of fact and also in the exercise of his discretion with respect to the responsibilities which the law imposes upon him;[4] and they will not interfere therewith unless it appears that he acted in excess of his powers, or that he so abused his discretion that his action was capricious or arbitrary.[5]

██ Upon our review of the record in the light of what has been said above, we see no basis therein which would justify upsetting the findings and judgment of the trial court, which sustained the action of the Bank Commissioner. (All emphasis added.)

Affirmed. No costs awarded.

CALLISTER, C. J., and TUCKETT, HENRIOD and ELLETT, JJ., concur.

3. Clearfield State Bank v. Brimhall, 24 Utah 2d 339, 471 P.2d 161.

4. Camacho v. Industrial Comm. of Utah, 119 Utah 181, 225 P.2d 728; City of North Las Vegas v. Public Service Comm., 83 Nev. 278, 429 P.2d 66.

5. Sec. 7-1-26(4), U.C.A.1953; Zions First National Bank, N. A. v. Taylor, 15 Utah 2d 239, 390 P.2d 854; Uintah Freight Lines v. Public Service Comm., 119 Utah 491, 229 P.2d 675.