**D.B., Petitioner,**

v.

**DIVISION OF OCCUPATIONAL AND PROFESSIONAL LICENSING OF the DEPARTMENT OF BUSINESS REGULATION, STATE OF UTAH, Respondent.**

No. 880329–CA.

Court of Appeals of Utah.

Sept. 8, 1989.

Bradley P. Rich (argued), Yengich, Rich, Xaix & Metos, Salt Lake City, for petitioner.

R. Paul Van Dam, State Atty. Gen., Shiela Page (argued), Stephen G. Schwendiman, Asst. Attys. Gen., for respondent.

---

David E. Robinson, Director, Div. of Occupational & Professional Licensing, Salt Lake City.

Before BILLINGS and GARFF, JJ., and CROFT,[1] Senior District Judge.

## OPINION

BRYANT H. CROFT, Senior District Judge.

D.B. seeks judicial review of an Order of Review entered April 26, 1988 by the Division of Occupational and Professional Licensing of the Department of Business Regulation ("Division") revoking D.B.'s license to practice as a clinical and certified social worker.

D.B. was brought before the Division by a petition charging him with "unprofessional conduct" in violation of specific Division rules. A hearing was held before an administrative law judge ("A.L.J.") and Board of Social Work Examiners ("Board"). Based thereon, the Board made findings of fact and conclusions of law, and recommended revocation of D.B.'s license. The Board's findings and conclusions were adopted by the Division, and its order of revocation was entered. A request for review by D.B. followed. Without further hearing, the Division affirmed its prior order. This judicial review followed.

D.B. contends that his rights under the federal and state constitutions were violated by the A.L.J., who failed to provide him with an opportunity to cross-examine the Division's witnesses at the hearing. "It is the function of a court called on to review an order of an administrative agency to determine whether there has been due process of law[.]" 73A C.J.S. Public Administrative Law and Procedure 229 (1983); *see Vance v. Fordham,* 671 P.2d 124 (Utah 1983); *Athay v. State Dep't of Business Regulation,* 626 P.2d 965 (Utah 1981); *In re License of Topik,* 761 P.2d 32 (Utah App.1988).

In *Endler v. Schutzbank,* 68 Cal.2d 162, 436 P.2d 297, 304, 65 Cal.Rptr. 297, 304

(1968), the Supreme Court of California, after its review of various cases, said:

> [T]hese decisions establish the principle that any person whose freedom to pursue his profession is seriously restricted by an official action .... may compel the government to afford him a hearing complying with the traditional requirements of due process.... Indeed, even in cases touching the national security, the United States Supreme Court has construed legislation in such a way as to preserve these due process safeguards whenever their disregard might lead to the arbitrary abridgement of the right to practice one's profession.

In *State Dep't of Community Affairs v. Utah Merit System Council,* 614 P.2d 1259, 1262 (Utah 1980) (citation omitted), our supreme court said:

> The necessity of preserving fundamental requirements of procedural fairness in administrative hearings was stated in *Interstate Commerce Commission v. Louisville & Nashville R.R. Co.,* 227 U.S. 88, 93, 33 S.Ct. 185, 187, 57 L.Ed. 431 (1913): The commission is an administrative body and, even where it acts in a quasi-judicial capacity, is not limited by the strict rules, as to the admissibility of evidence, which prevail in suits between private parties. But the more liberal the practice in admitting testimony, the more imperative the obligation to preserve the essential rules of evidence by which rights are asserted or defended.
> .... All parties must be fully apprised of the evidence submitted or to be considered, and must be given opportunity to cross-examine witnesses, to inspect documents and to offer evidence in explanation or rebuttal. In no other way can a party maintain its rights or make its defense. In no other way can it test the sufficiency of the facts to support the finding....

In *Simpson v. Wolansky,* 38 N.Y.2d 391, 343 N.E.2d 274, 277, 380 N.Y.S.2d 630, 634 (1975) (citations omitted), the court said:

---

**1.** Bryant H. Croft, Senior District Judge, sitting by special appointment pursuant to Utah Code

Ann. § 78–3–24(1)(j) (1987).

True, the hearing conducted by the administrative official acting in a judicial or quasi-judicial capacity may be more or less informal and even technical legal rules of evidence and procedure may be disregarded, but included in the fundamental requirement of a fair trial, absent the waiver, is the entitlement of the party whose rights are being determined to be fully apprised of the proof to be considered, with the concomitant opportunity to cross-examine witnesses....

Utah Code Ann. § 63–43b–8(1)(a) (Supp. 1988) states that, in all formal adjudicative proceedings, "[t]he presiding officer shall regulate the course of the hearing to obtain full disclosure of relevant facts and to afford all the parties reasonable opportunity to present their position." Subsection (1)(d) of that section provides that parties in such proceedings have the right to conduct cross-examination.

Utah Code Ann. § 63–46b–16(4) provides that, upon review, the appellate court shall grant relief only if, on the basis of the record made before the agency, it determines that a person seeking judicial review has been "substantially prejudiced" by reasons stated therein, included among which is that the agency "has failed to follow prescribed procedure."

From a review of the transcript of the hearing, it is manifestly clear that at no time did the A.L.J. ever afford D.B., who appeared pro se, an opportunity to cross-examine any one of the Division's three witnesses.

In *Endler v. Schutzbank*, 436 P.2d at 304, 65 Cal.Rptr. at —— (quoting *Greene v. McElroy*, 360 U.S. 474, 496, 79 S.Ct. 1400, ——, 3 L.Ed.2d 1377 (1959)), the court said that an opportunity to challenge the truthfulness of testimony,

[w]hile .... important in the case of documentary evidence .... is even more important where the evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy. We have formalized these protections in the require-

ments of confrontation and cross-examination. They have ancient roots.
(Emphasis added.)

In this case, D.B. was confronted with the prospect of losing his professional license upon allegations of "unprofessional conduct" with a former client (identified in the proceedings as Jane Doe) occurring more than four years prior to the hearing. At the beginning of the hearing, the A.L.J. stated into the record that the parties "have identified there is a stipulation as to undisputed facts set forth in the petition." The A.L.J. did not further specify the content of the stipulation. The petition contained a section entitled "Statement of Facts." It is evident from the transcript that D.B. denied certain facts alleged in the petition. One of the alleged facts was contrary to information contained in one of the Division's documentary exhibits.

At the time D.B. first met Jane Doe in November 1982, he was employed as a social worker for a county agency. She had emotional problems which had roots in sexual molestation as a child. D.B. was assigned to consult with her and did so on a regular weekly or bi-weekly basis up to January, 1984, when the professional relation terminated. However, for several months thereafter, D.B. and Jane Doe met on occasions, personally and by phone. D.B. admitted that he and Jane Doe, on occasion, engaged in hugging, kissing, and fondling of sexual organs. He denied ever having engaged in sexual intercourse with her, but stated that upon one occasion they had disrobed. The record is not clear as to when such conduct had its beginning or ending, or what period of time was covered by the conduct in question.

Utah Code Ann. § 63–46b–8(1)(f) (Supp. 1988) states: "All testimony presented at the hearing, if offered as evidence to be considered in reaching a decision on the merits, shall be given under oath."

With a four-year lapse between the termination of the professional relationship and the hearing, the importance of the sworn testimony of Jane Doe is apparent under the circumstances. A strong element of unfairness at the hearing appears

in the manner in which the A.L.J. allowed Jane Doe's testimony to be placed in the record. In an opening statement, counsel for the Division said it was anticipated that the client's testimony would be by proffer. The A.L.J. had Jane Doe placed under oath, following which counsel narrated seven pages of information which she stated would be included in Jane Doe's testimony, were she to give it herself. It is evident from the record that the proffer contained some erroneous statements, particularly with respect to time factors. At the conclusion of the proffer, the client was asked whether the proffered statement was equivalent to the testimony that she would have given, to which she replied, "Yes."

The allowance by the A.L.J. of the presentation of her important, crucial testimony by narrative proffer by legal counsel for the Division precluded reasonable cross-examination of that witness. Of necessity, Jane Doe's testimony was evidence that had "to be considered in reaching a decision on the merits." The A.L.J. had a statutory duty "to regulate the course of the hearing to obtain full disclosure of the facts." The course he took was unfair to D.B.

Dr. Breck LeBeque, a psychiatrist then treating Jane Doe, was called as a witness by the Division. In his testimony, he and counsel repeatedly used the phrase "sexual abuse" in referring to D.B.'s conduct in question. LeBeque was not asked to define that phrase. D.B. attempted to rebut the serious connotation of abuse, stating that the hugging, kissing, and fondling that occurred between himself and Jane Doe was by mutual consent. No opportunity to cross-examine LeBeque was ever offered to D.B. by the A.L.J.

It is true, of course, as contended by respondent, that in administrative hearings, the hearing officer is not required to assume the duties of counsel for a person appearing pro se, but he is required to accord to such person due process of law, including the opportunity for a fair hearing.

Respondent contends that since D.B. raised no objection to the failure of the A.L.J. to afford him an opportunity to cross examine the witnesses by whom he was confronted, he can not raise it on appeal. As a general rule, objections or questions which have not been raised or urged in the proceedings before the administrative agency will not be considered by the court on review of the order of such agency.[2] However, we are not precluded from reversing in a case of plain error such as this.

Utah Rule of Evidence 103(d) provides: "Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court." Utah R.Evid. 101 states that these rules govern proceedings in the courts of this state.

While it is apparent from the record that D.B.'s admission that at times[3] he hugged, kissed, and fondled Jane Doe may have established "unprofessional conduct" under the specific rules established by the Division, as identified in the petition, and thus may constitute a basis upon which the Division could justify revocation of D.B.'s license, we believe that such should be permitted only in proceedings where the Division itself affords a fair hearing under due process as mandated and required by law.

Utah Code Ann. § 63–46b–16(4) (1988) states:

> The appellate court shall grant relief only if, on the basis of the agency's record, it determines that a person seeking judicial review has been substantially prejudiced by any of the following: ....
>
> (e) the agency has engaged in an unlawful procedure or decision-making process, or has failed to follow prescribed procedure.

---

**2.** 73A C.J.S. Public Administrative Law and Procedure 191 at 210 (1983).

**3.** A second issue was raised by D.B. as to the sufficiency of facts to support revocation and more specifically the admissibility of evidence of activities that allegedly occurred between D.B. and Jane Doe in a period of time when he was no longer acting in a professional capacity. In view of the decision of reversal herein, we deem it unnecessary to consider this issue further.

In *Carlson v. Kozlowski,* 172 Conn. 263, 374 A.2d 207, 208 (1977) (citations omitted), the Supreme Court of Connecticut said:

> The words "substantially prejudice" as they appear in the statute are to be construed according to commonly approved usage of the language, "[o]r, stated another way, statutory language is to be given its plain and ordinary meaning.

(Citation omitted.)

We hold that the hearing given to D.B. lacked the due process of law required by law, was unfair, and constitutes "substantial prejudice" to him.

The decision of the Division revoking D.B.'s license is reversed and the case is remanded for a new hearing.

BILLINGS and GARFF, JJ., concur.